DORAN, Appellant,

v.

NORTHMONT BOARD OF EDUCATION, Appellee.*

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19024.

Decided Feb. 1, 2002.

</div>

* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1477, 2002-Ohio-2494, 768 N.E.2d 1184.

Elmer C. Doran, appellant, pro se.

Nicholas E. Subashi and David J. Arens, for appellee.

BROGAN, Judge.

{¶ 1} Plaintiff–appellant, Elmer C. Doran, appeals the decision of the trial court granting the motions of defendant–appellee, Northmont Board of Education, to dismiss and for summary judgment. The motion to dismiss was granted on all of Doran's claims that arose on or before July 28, 1998, because those claims would be barred by the applicable statute of limitations. It does not appear that Doran has disputed that finding. The summary judgment was granted on all of Doran's claims that arose after that date. In his brief, Doran's assignments of error are each several paragraphs long and convoluted at best. After careful review of the entire brief, it appears he has made two main arguments that we summarize as follows:

{¶ 2} I. The trial court erred in finding that defendant-appellee has a rule establishing a reasonable method whereby a person may determine the time, place, and purpose of special meetings, particularly the meeting on July 29, 1998.

{¶ 3} II. The trial court erred by not finding that the board improperly held a secret meeting prior to July 29, 1998, in which the board discussed the appointment of a new superintendent, who was subsequently appointed by motion at the July 29, 1998 meeting.

I

{¶ 4} As previously mentioned, this case arrives in our court as a result of a summary judgment. An appellate court's review of a summary judgment decision is de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 10, 711 N.E.2d 726, citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In reviewing a summary judgment decision, the appellate court, like the trial court, must apply the standard found in Civ.R. 56. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 5} R.C. 121.22, otherwise known as the Sunshine Law, was promulgated to require public bodies to conduct their meetings in public. Of particular importance to this case is R.C. 121.22(F), which provides for public notification of these meetings:

{¶ 6} "Every public body shall, by rule, establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting.

{¶ 7} "The rule shall provide that any person may, upon request and payment of a reasonable fee, obtain reasonable advance notification of all meetings at which any specific type of public business is to be discussed. Provisions for advance notification may include, but are not limited to, mailing the agenda of meetings to all subscribers on a mailing list or mailing notices in self-addressed, stamped envelopes provided by the person."

{¶ 8}   In his complaint, Doran alleged that the Northmont Board of Education violated the first paragraph of R.C. 121.22(F) by not having a rule which establishes a method for the general public to be notified of the time, place, and purpose for special meetings.   He is specifically concerned about the July 29, 1998 meeting at which the board adopted a resolution to hire a new superintendent, Gale T. Mabry.   He argues that because the board does not have a rule establishing a method for the general public to learn about these meetings, any formal actions taken at that meeting should be "declared rescinded, canceled and held for naught" pursuant to R.C. 121.22(H).   In this regard, R.C. 121.22(H) provides:

{¶ 9}   "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body.   A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) of this section and conducted at an executive session held in compliance with this section.   A resolution, rule, or formal action adopted in an open meeting is invalid if the public body that adopted the resolution, rule, or formal action violated division (F) of this section."

{¶ 10}   Doran does not dispute that the board has complied with the second paragraph of R.C. 121.22(F).   In fact, Doran himself received notification of the July 29, 1998 meeting by complying with a rule established pursuant to the second paragraph of that section.   This rule allows individuals to mail $5 and self-addressed, stamped envelopes to the board in order to receive advance notification of all special meetings.   However, Doran does not believe this rule is sufficient to satisfy the first paragraph of R.C. 121.22(F).

{¶ 11}   By affidavit of the treasurer, Sandra Harris, the board submitted that it routinely notifies the Dayton Daily News and the Englewood Independent at least twenty-four hours prior to every special meeting.   While there is no rule establishing this, it is the board's practice.   Technically, this is a violation of R.C. 121.22(F), which would require invalidation of the action taken at the meeting pursuant to R.C. 121.22(H).   However, some courts have found that actions taken by a board are not invalid simply because the board has not established, by rule, a reasonable method of informing the public of the time, place, and purpose of such meetings. See, e.g., *Hoops v. Jerusalem Twp. Bd. of Trustees* (Apr. 10, 1998), Lucas App. No. L–97–1240, 1998 WL 172819, at 4; *Barbeck v. Twinsburg Twp.* (1992), 73 Ohio App.3d 587, 594–95, 597 N.E.2d 1204.   We agree with these courts.   Instead, the purpose of R.C. 121.22(H) is to invalidate those actions taken by a board where insufficient notice was given to the public regarding the meeting.   In this case, 95 visitors were present at the July 29, 1998 meeting,

including Doran. There is no evidence in the record that insufficient notice was given. Therefore, any action taken at that meeting should not be disturbed.

{¶ 12} However, we agree with Doran to the extent that the board must establish a rule to comply with the first paragraph of R.C. 121.22(F). It appears to this court that the first and second paragraphs of that subsection address different types of notice. The first paragraph discusses a general notification to the public, while the second explains another option if an individual does not wish to seek out the information himself. The board currently notifies the Dayton Daily News and the Englewood Independent of special meetings at least 24 hours in advance. If the board would establish a rule providing that it would notify these newspapers and direct the newspapers to publish this notice consistently, it would satisfy the first paragraph of R.C. 121.22(F). Unfortunately, one of Sandra Harris's affidavits admits that she does not direct the newspapers to publish this notice; instead, publication is at the newspapers' discretion. We do not feel this provides "reasonable notice" to the public. The general notification required in R.C. 121.22(F) could be as simple as posting a notice on the door where the school board meets. Any notice that is consistent and would actually reach the public would satisfy the statute. Then, if any individual did not wish to seek out the information in the manner set forth in the rule, that individual could take advantage of the advance notification process already established.

{¶ 13} Based on these findings, we must reverse that portion of the summary judgment which found that the board's current rule is sufficient to satisfy R.C. 121.22(F).

II

{¶ 14} Doran's next argument seems to have been misconstrued by the trial court. From our reading of Doran's brief, it appears that he is claiming that because a resolution was raised and immediately adopted at the July 29, 1998 meeting to hire Gale T. Mabry as superintendent, the board must have met sometime prior to that meeting, in secret, to discuss the issue. It does not appear that Doran claims that the actual July 29, 1998 meeting that he attended was secret and unannounced; his only complaint about that meeting was that the board violated the notification statute, which we have already addressed. Instead, Doran also claims that an alleged separate, secret meeting occurred prior to the July 29 meeting to discuss the board's choice among the candidates for superintendent.

{¶ 15} Doran has presented evidence that the board held executive sessions on July 14, July 16, and July 21, 1998. Pursuant to R.C. 121.22(G)(1), a public body may hold an executive session, a discussion from which the public is

excluded, "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official." Each of these three meetings occurred following the proper procedure for conducting an executive session pursuant to R.C. 121.22(G). In addition, the minutes for each meeting indicated that personnel matters were being discussed, particularly on July 14 and July 21, the candidate for superintendent.

{¶ 16} However, Doran claims there must have been another meeting after these and before July 29. From our review of the record, Doran could present no evidence that such a meeting occurred. There must be evidence not only that a meeting occurred, but also that the action taken at the public meeting occurred as a result of improper deliberations in executive session. *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp. Local 530* (1995), 106 Ohio App.3d 855, 863–64, 667 N.E.2d 458, citing *Moraine v. Montgomery Cty. Bd. of Commrs.* (1981), 67 Ohio St.2d 139, 145, 21 O.O.3d 88, 423 N.E.2d 184.

{¶ 17} After a careful review of the record, we find no evidence that any meeting occurred between July 21 and July 29. In any event, if such a meeting had been held to discuss the hiring of a superintendent, it would have been appropriately held as an executive session. Consequently, summary judgment was proper on this claim.

{¶ 18} Based on the foregoing, we affirm in part and reverse in part the trial court's summary judgment. We reverse and remand for the trial court to order the Northmont Board of Education to develop a rule establishing a reasonable method whereby the public can determine the time, place, and purpose of special meetings held by the board. We affirm the remaining findings of the trial court.

Judgment affirmed in part,
reversed in part
and cause remanded.

WOLFF, P.J, and FREDERICK N. YOUNG, J., concur.