OPINION
{¶ 1} The plaintiffs-appellants, Swickrath Sons, Inc. ("Swickraths"), appeal the June 24, 2003 judgment of the Common Pleas Court of Allen County granting summary judgment in favor of defendants, Village of Elida, Ohio et al. ("Village").
 {¶ 2} The Swickraths own and operate an automotive body repair business at 309 North Greenlawn Avenue in Elida, Ohio. The Swickraths' property was originally part of American Township. The Swickraths petitioned in 1985 to have their property rezoned from residential I class to commercial class. The application was approved by the American Township Zoning Commission and the American Township Trustees. In 1987, the Zoning and Land Use Committee recommended approval of the rezoning. The Swickraths continued to operate their auto body repair shop at the 309 North Greenlawn Avenue location (as though the property had been zoned commercial).
 {¶ 3} In 1990, property owners, including the Swickraths, petitioned for annexation of their property (at that time part of American Township) by the Village of Elida. The Elida Village Council passed Ordinance No. 586-90, accepting the property into the Village in March of 1990. A 1979 Elida zoning ordinance, in effect at the time of the annexation of the property, provided that newly annexed territory would be assigned a temporary zoning classification, which in this case was R-1 residential.
 {¶ 4} In 1992, the Village passed Ordinance No. 622-92 which zoned certain "recently annexed territory" into R-1 residential. The metes and bounds description of this ordinance did not include the Swickrath's property, although the intent of the Village was to include the property. In 1997, the Village passed another zoning ordinance. However, after a lawsuit was filed against the Village for failure to follow the proper procedure for passing an ordinance, the Village voluntarily repealed the 1997 ordinance. Then at several Village Council meetings in 1999 the Village discussed the rezoning of certain land, including the Swickrath's property. Notice was published for the meetings in The Lima News and the printed time of the meetings was 8:30 p.m. However, the Village Council held the meetings at 7:30 p.m., and attempts to have the published time changed in The Lima News were unsuccessful.
 {¶ 5} A public hearing for the proposed zoning ordinance was held on September 30, 1999. No newspaper notice of the public hearing was printed, but the Village had notice of the public hearing printed on the water bills of Village residents. Village residents, including the Swickraths, attended the hearing on September 30, 1999 and discussion regarding the 1999 zoning ordinance was entertained. On December 13, 1999, Ordinance No. 769-99, which is a comprehensive zoning ordinance that classifies certain property, including the Swickrath property, as residential, was passed by the Village. This ordinance is identical to the 1997 ordinance repealed by the Village. The 1999 zoning ordinance protects the pre-existing, non-conforming use of the Swickraths' property for operation as an auto body repair shop, which is a commercial purpose. The Village has not interfered, nor threatened to interfere, with the auto body repair activities engaged in by the Swickraths.
 {¶ 6} On December 13, 2001, the Swickraths filed a complaint in the Court of Common Pleas of Allen County alleging the Village violated the Ohio Sunshine Law, failed to substantially comply with notice requirements, breached a ratified contract, acted unreasonably and arbitrarily, and committed a taking of the Swickraths' property without due process of law. The claims were also made against the individuals acting on behalf of the Village. On January 7, 2002, the Village removed the case to the United States District Court, Northern District of Ohio due to the constitutional and other federal claims raised by the Swickraths. The Village filed a motion for summary judgment on July 1, 2002 in the United States District Court, seeking dismissal on the merits of both the state and federal claims. On the same day, the Swickraths filed an amended complaint which dismissed their federal constitutional claims. The Swickraths then sought to have the case remanded to the Common Pleas Court of Allen County on the ground that federal jurisdiction no longer existed. While the motion to remand was pending, the Swickraths filed a brief in opposition to the Village's motion for summary judgment. On October 21, 2002, the Village filed a reply memorandum in support of their motion for summary judgment.
 {¶ 7} The case was ultimately remanded to the Common Pleas Court of Allen County by a memorandum opinion and judgment entry of the United States District Court issued on January 15, 2003 and an order issued on February 3, 2003. The motion for summary judgment filed in federal court was denied as moot. The Village filed a "renewed" motion for summary judgment in the Common Pleas Court of Allen County. The trial court granted the motion for summary judgment on June 24, 2003.
 {¶ 8} The Swickraths now appeal the granting of summary judgment in favor of the Village, raising the following assignment of error:
The trial court committed an error of law by granting the appellee'smotion for summary judgment.
 {¶ 9} The standard for review of a grant of summary judgment is one of de novo review. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 10} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 11} In the case sub judice, the Swickraths make multiple arguments as to why the granting of summary judgment in favor of the Village was incorrect. We have some concern that the statute of limitations has run in several of the claims presented by the Swickraths. Nevertheless, for a complete analysis, we address, in turn, the merits of all the arguments presented on appeal.
 Substantial Compliance with R.C. 713.12 {¶ 12} The Swickraths argue that the Village failed to comply with the statutory requirements for amending the zoning code, thereby rendering the 1999 zoning ordinance void ab initio. More specifically, the Swickraths argue that the Village held council meetings from February until June 1999 with knowledge that the incorrect meeting time was published in The Lima News. In addition, the Swickraths argue that the Village did not publish any notice of the September 30, 1999 public hearing in a newspaper of general circulation. The Swickraths assert that these errors on the part of the Village are sufficient to invalidate the 1999 zoning ordinance.
 {¶ 13} We begin by noting that courts have held that a zoning ordinance is presumed valid unless the contrary can be clearly shown by the party attacking the ordinance. Leslie v. Toledo (1981),66 Ohio St.2d 488, 423 N.E.2d 123; Brown v. Cleveland (1981),66 Ohio St.2d 93, 420 N.E.2d 103. In addition, it is presumed that the necessary procedures for legal adoption of legislation were followed, unless evidence to the contrary is shown. Smith v. Juillerat (1954),161 Ohio St. 424, 119 N.E.2d 611.
 {¶ 14} The Village of Elida is a noncharter village that is governed by the Ohio Revised Code. R.C. 713.12, which governs the passing of municipal zoning ordinances, provides:
Before any ordinance, measure, regulation, or amendments thereto * * *may be passed the legislative authority of the municipal corporationshall hold a public hearing thereon, and shall give at least thirty days'notice of the time and place thereof in a newspaper of generalcirculation in the municipal corporation.
 {¶ 15} The court below inferred that R.C. 713.12 was not strictly complied with when the 1999 zoning ordinance was enacted, but that there was substantial compliance with the requirements. Courts have repeatedly held that the requirements of a procedural statute are met when the municipality substantially complies with the statute's procedural mandates, which requires the municipality to act in a way to achieve the purpose of the statute. Brow v. Sherwin-Williams Co. (1952), 63 Ohio Law Abs. 466, 109 N.E.2d 864; White v. Parma (Sept. 26, 1985), 8th Dist. App. No. 49539, unreported, 1985 WL 8635. The purpose of the notice requirement in R.C. 713.12 is to provide notice of the proceedings to the public because actions of the legislative authority may affect their rights.
 {¶ 16} In White, supra, appellant sought injunctive relief to prevent appellee, City of Parma, from terminating their existing use and occupancy of the property in question. Appellant attempted to have the ordinance establishing the zoning plan for their property declared invalid for failure to comply with statutory requirements. The court inWhite found that the purpose of the statute was accomplished by the actions of the City of Parma, despite records of the Planning Commission not being available, and that any deviation, for that reason alone, did not justify an award of injunctive relief. In support of its decision, the court in White found:
Despite the lack of Planning Commission records, it is apparent thatthe commission worked on the ordinance for almost one year, and with thepublic's knowledge. The issue of a zoning ordinance was brought to theattention of the public * * * giving the residents of Parma almost oneyear to voice their concerns to the Planning Commission or Council.
Id. at *2.
 {¶ 17} In addition, the court in White distinguished the case ofMorris v. Roseman (1954), 162 Ohio St. 447, 123 N.E. 419, in which a zoning ordinance was held to be invalid for failure to comply with the statutory requirements of 4366-11 GC, now R.C. 713.12. In this case, the Village of Oakwood was incorporated with the result that the regulations and ordinances of Bedford Township were no longer applicable within Oakwood. Id. at 448. On the same day as incorporation, the Oakwood Council adopted an emergency zoning ordinance to be effective immediately, which was held to be unauthorized and ineffective for failure to comply with the public hearing requirement. Id. at 449. The circumstances in this case clearly show that the purpose of the statutory notice requirement was disregarded and the citizens were unaware of the ordinance until after its passage, having no opportunity to voice their concerns and protect their property. Id. at 452. This is not what transpired in the case sub judice with the passage of the 1999 zoning ordinance by the Village of Elida.
 {¶ 18} The Swickraths contend that the meetings held by the Village Council in 1999, on February 2, February 16, March 2, March 18, March 30, April 20, June 15, and June 22 violated the notice requirement of R.C. 713.12 because the start time of the meetings printed in The LimaNews was listed as 8:30 p.m., instead of 7:30 p.m. Even with the Village conceding that the newspaper misprinted the start time of the meetings, this is not a violation of R.C. 713.12. The requirements of R.C. 713.12
do not cover the regularly scheduled Village Council meetings, rather the requirements pertain to a public hearing being held before an ordinance may be passed by the legislative authority. Therefore, the only date in which a violation of R.C. 713.12 could exist is the September 30, 1999 public hearing in which the Village planned to discuss the 1999 zoning ordinance and recommend it for passage.
 {¶ 19} The Village concedes that no record can be found to show that notice of the September 30, 1999 hearing was published in The LimaNews, or any other newspaper. Although strict compliance with R.C. 713.12
would require notice of the hearing to be published at least thirty days prior to the date of the hearing in a newspaper of general circulation, the Village substantially complied with R.C. 713.12 with the other forms of notice it provided to residents of the Village. The Village made public postings in at least five locations within the Village that provided the time, place and purpose of the September 30, 1999 hearing. In addition, the Village had the same information printed on each resident's water bill for the month of August, which stated "proposed zoning ordinance — public hearing Sept. 30, 1999 — 8:00 p.m. Elida Town Hall." We find that this individualized notice served the same purpose as the publication in the newspaper of general circulation would have served.
 {¶ 20} In fact, the record shows that the notice of the September 30, 1999 public hearing was effective, as the Swickraths were in attendance at the hearing and were represented by counsel. There is no evidence that the rights of any property owners in the Village were prejudiced by the notice of the September 30, 1999 public hearing being made by means of public postings within the Village and printed notice on Village residents' water bills. Nor is there any evidence that any Village resident was precluded from commenting on the proposed zoning. For these reasons, we find that notice of the September 30, 1999 hearing was in substantial compliance with the requirements of R.C. 713.12
 {¶ 21} Compliance with Ohio Sunshine Law — R.C. 121.22
 {¶ 22} The Swickraths' next argument concerns alleged violations of the Ohio Sunshine Law, codified in R.C. 121.22. The Swickraths contend that the Village violated R.C. 121.22(C) by conducting meetings that were not open to the public and by failing to prepare, file and maintain minutes of their Village Council meetings. In addition, the Swickraths contend the Village violated R.C. 121.22(F) by failing to establish a reasonable method whereby residents could determine the time and place of regularly scheduled meetings.
 {¶ 23} The intent of the Ohio Sunshine Law is to require governmental bodies to deliberate public issues in public. Moraine v.Montgomery Cty. Bd. of Commrs. (1981), 67 Ohio St.2d 139, 423 N.E.2d 184. "A violation of the `open meeting' requirement imposed by R.C. 121.22(C) is a prerequisite to invalidation of a resolution, rule, or other formal action in accordance with R.C. 121.22(H)." Barbeck v. Twinsburg Twp.
(1992), 73 Ohio App.3d 587, 595, 597 N.E.2d 1204. There must be evidence in the record that the public body arrived at its decision on the actionas a result of nonpublic deliberations that occurred in executive session. Moraine, 67 Ohio St.2d at 145, 423 N.E.2d 184. In the Moraine
case, the Ohio Supreme Court agreed with the holding of the trial court that:
* * * In short the executive session was not a prearranged meetingoutside of the public hearing wherein considered decision makingconcerning the landfill rezoning took place. Moreover, the intent of theSunshine Law, that deliberations concerning public issues be madepublic, could not be further served by invalidating a decision insofar assuch deliberations were laid before the public eye.
Id.
 {¶ 24} Although the Swickraths assert that the Village violated R.C. 121.22(C), the Swickraths cannot prove that any meetings by the Village Planning Commission were anything but open to the public or that minutes of the meetings were not properly prepared. R.C. 121.22(C) provides, in relevant part:
All meetings of any public body are declared to be public meetings opento the public at all times. * * *
 The minutes of a regular or special meeting of any public body shall bepromptly prepared, filed, and maintained and shall be open to publicinspection.
 {¶ 25} The Swickraths argue that the incorrect published time of Village Council meetings in The Lima News resulted in the meetings not being open to the public. However, the record shows that the Swickraths attended several Village Council meetings from February until June of 1999 in which the proposed zoning ordinance was discussed. The evidence in the record also shows that there were several means for residents to ascertain the time and place of the Village Council meetings and that these meetings were attended by residents of the Village. Moreover, the Swickraths not only attended regularly scheduled Village Council meetings, but also attended the September 30, 1999 public hearing and were represented by counsel at the hearing, as previously noted. The residents of the Village, including the Swickraths, had ample opportunity to comment on the 1999 zoning ordinance.
 {¶ 26} With regard to the Swickraths' claim raised in their brief that the Village failed to prepare, file and maintain minutes of its meetings, there is no evidence in the record that supports this claim. The record, on the other hand, does show that minutes were prepared for the Village Council meetings during the time period in question in this case, from February 1999 through June 1999, and these records were kept on file. In addition, such a violation as alleged by the Swickraths with regard to the preparation, filing and maintaining of minutes from Village Council meetings is not a violation that would result in the invalidation of the 1999 zoning ordinance.
 {¶ 27} The Swickraths assert further that the Village failed to meet the requirements of R.C. 121.22(F), which provides, in relevant part:
Every public body, by rule, shall establish a reasonable method wherebyany person may determine the time and place of all regularly scheduledmeetings and the time, place, and purpose of all special meetings.
 {¶ 28} The record shows that the Village complied with R.C. 121.22(F) by establishing three separate methods by which the time and place of meetings would be known to the residents of the Village. First, the Village Council annually adopts "Rules of Council" at the first session of each year, which includes a section establishing the time and location of all regularly scheduled council meetings. The 1999 Rules of Council provide, under the "regular meetings" heading that "council will meet in the Town Hall, 200 W. Main St., on the second and fourth Tuesdays of each month at 7:30 p.m." Therefore, any person who wishes to ascertain the time and place of the regularly scheduled meetings of the Elida Village Council would only need to consult the Rules of Council.
 {¶ 29} Second, the exterior door of the Town Hall leading to Council chambers has a sign painted on it that includes the information that Village Council meetings are held the second and fourth Tuesday of the month at 7:30 p.m. The affidavit of James Shrider, Village Administrator since 1996, indicates that the sign on the Town Hall door has been located there since at least 1998. Therefore, any person who wishes to ascertain the time and place of the regularly scheduled meetings of the Elida Village Council would only need to look at the door of the Town Hall.
 {¶ 30} Third, the Village had established a practice of publishing notice of Council meetings in The Lima News. However, during the time period from February through June 1999, in which Council meetings were held discussing the 1999 zoning ordinance, The Lima News incorrectly published the start time of the Village Council meetings as 8:30 p.m., rather than the correct time of 7:30 p.m. At least one Village official contacted The Lima News regarding the incorrect published information. The affidavit of James Shrider indicates that he made numerous phone calls to The Lima News reporting the publication error and requesting that their records be updated to include the correct information. However, the publication error was not corrected until sometime in the year 2000.
 {¶ 31} This is not a case where the Village failed to have notice of public hearings published in a newspaper of general circulation; rather this is a case where the newspaper published incorrect information regarding the public hearing. In a case of similar facts, the court inBlack v. Mecca Twp. Bd. of Trustees (1993), 91 Ohio App.3d 351,632 N.E.2d 923, refused to hold that a zoning commission meeting violated the Ohio Sunshine Law because of a misprint in the newspaper. The court held that "[t]he record demonstrates that the zoning commission did establish a reasonable method of informing the public of its meetings, to wit: publication of the notices of meetings in a newspaper * * *." Id. at 356. The court also noted that "typographical errors in newspaper publications are not uncommon," and the court declined to find a violation of the Sunshine Law because of the publication error. Id.
 {¶ 32} Moreover, a violation of R.C. 121.22(F) is not cause for the invalidation of the 1999 zoning ordinance. Some courts have found that actions taken by a board are not invalid simply because the board has not established, by rule, a reasonable method of informing the public of the time, place, and purpose of such meetings. See, e.g., Doran v. NorthmontBd. of Edn. (2002), 147 Ohio App.3d 268, 2002-Ohio-386, 770 N.E.2d 92;Hoops v. Jerusalem Twp. Bd. of Trustees (Apr. 10, 1998), 6th Dist. App. No. L-97-1240, unreported, 1998 WL 172819; Barbeck v. Twinsburg Twp.
(1992), 73 Ohio App.3d 587, 597 N.E.2d 1204. We agree with this line of reasoning and with the Second District's holding that "the purpose of R.C. 121.22(H) [the section that allows for invalidation of an action] is to invalidate those actions taken by a board where insufficient notice was given to the public regarding the meeting." Doran,147 Ohio App.3d at 271. Without a showing by the Swickraths that the notice for the Village Council meetings was insufficient, the Swickraths have no valid claim under R.C. 121.22.
 Representations Made by Mayor {¶ 33} The next argument presented by the Swickraths is that the former mayor, acting in his official capacity at the time he was the mayor of the Village, had apparent authority to enter into contracts on behalf of the Village. The Swickraths claim that Mayor Schwinnen, at the time he was serving as mayor of the Village of Elida, promised the Swickraths that the Village would not change the zoning status of their property after it was annexed into the Village. In addition, the Swickraths argue that the Village ratified the actions of the mayor years later when it adopted the 1992 zoning ordinance. These assertions, if true, have no legal consequence.
 {¶ 34} R.C. 733.24, which provides the duties and powers of the mayor of a village, states, in relevant part:
Such mayor shall be the chief conservator of the peace therein andshall have the powers and duties provided by law. He shall be thepresident of the legislative authority and shall preside at all regularand special meetings thereof, but shall have no vote except in case of atie.
 {¶ 35} The powers granted to the mayor of a village do not include the power to enter into contracts that guarantee an outcome to Village residents when such outcome requires legislative approval before it may be executed. The mayor is not given a legislative role by the powers and duties granted to him by R.C. 733.24; in fact, the mayor is explicitly denied a vote at legislative meetings, unless he is required to break a tie. Therefore, former Mayor Schwinnen clearly did not have the actual authority to make representations to the Swickraths that their property would retain a commercial zoning classification after its annexation into the Village and it cannot be inferred from the powers granted to the mayor that he had apparent authority to make such a representation. In fact, such an inference is explicitly prohibited by Ohio law.
It is the settled law of Ohio that a municipality has only such powersas are conferred by the Constitution, the statutes of the state, and bycharter adopted pursuant to the Constitution and statute of the state;that the officers of a municipality have only such powers as areconferred by the Constitution, statutes, and charter; and that suchpowers may be exercised only in the manner prescribed by statute and thecharter.
 Welch v. Lima (1950), 89 Ohio App. 457, 464, 102 N.E.2d 888.
 {¶ 36} There is nothing in the statutes of the State of Ohio that would lead the Swickraths to believe that former Mayor Schwinnen had any authority to make the representations that the Swickraths allege he made. It is irrelevant to our review whether Mr. Schwinnen made such representations to the Swickraths at the time he served as mayor of the Village. Relevant to our review though is the well settled law of Ohio that "persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents, and must, at their peril, ascertain whether all necessary statutory formalities have been met." Kimbrell v. Seven Mile (1984),13 Ohio App.3d 443, 445, 469 N.E.2d 954. In addition, "[t]hose who deal with the agents of a municipality must assume the risk that all necessary steps have been taken requisite to a legal contract." Id. There is no support in the record of the purported reliance by the Swickraths on the alleged representations made by former Mayor Schwinnen. The Swickraths are responsible for ascertaining the limitations of power on agents of the municipality in which they plan to enter into contracts. Therefore, in this case, the Swickraths were responsible for having knowledge of the limits of the mayor's power in making the alleged representations to them.
 {¶ 37} The Swickraths also argue that the Village ratified the agreement in which the Swickraths agreed to annexation of their property by the Village in exchange of the mayor's assurance that the property would retain its commercial zoning classification. The Swickraths contend that the Village ratified the agreement in passing the 1992 zoning ordinance, which did not technically include the Swickraths' property in the metes and bounds description, but included the property in its intention and general description that the ordinance was to apply to all newly annexed property. The Village argues that such omission was inadvertent and did not change the effect of the ordinance as it applied to the Swickraths' property. Even if such omission by the Village was intentional, that omission does not constitute ratification by the Village of the alleged agreement between the Swickraths and former Mayor Schwinnen. The Village made no mention of the alleged agreement or representations and there is, in fact, no proof that the Village was even aware of such an agreement or representations. A party cannot ratify an agreement of which it has no knowledge. There is no evidence of any action by the Village Council or any legislative body of the Village authorizing, acquiescing in, or ratifying the making of any agreement by former Mayor Schwinnen to the Swickraths that their property would retain a commercial zoning classification after annexation of the property into the Village. Therefore, the Swickraths have no cause of action under this theory.
 Zoning Ordinance Unconstitutional or a Taking {¶ 38} The Swickraths voluntarily withdrew the arguments that the zoning ordinance was unconstitutional and had the effect of a taking from their original complaint while under the jurisdiction of the United States District Court. The counts in the complaint relating to these arguments were dismissed and the case was remanded back to the Common Pleas Court of Allen County. These constitutional arguments were not addressed in the judgment of the trial court, which this court now reviews. The Swickraths may not, therefore, raise these arguments for the first time on appeal to this court. Accordingly, we will not address these arguments.
 {¶ 39} The Swickraths have not provided evidence that establishes that the 1999 zoning ordinance should be held invalid. We, therefore, conclude that the trial court did not err in granting summary judgment to the Village of Elida.
 {¶ 40} The Swickraths' assignment of error is overruled and the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment affirmed.
WALTERS and SHAW, JJ., concur.